## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-01623-PAB-NYW

PAUL WEGNER,

      Plaintiff,

v.

DALE DAHLQUIST, and
KC WOODS TRUCKING , Inc.,

      Defendants.

---

## ORDER ON DISCOVERY MOTIONS

---

Magistrate Judge Nina Y. Wang

This matter comes before the court on the Motion For Fed.R.Civ.P. 35 Examination of Plaintiff ("Motion for Rule 35 Examination") [#38] filed by Defendant KC Woods Trucking, Inc. ("KC Woods") on July 8, 2015, and Plaintiff's Motion to Compel Production of the Unredacted Medical Examination Report Contained in the Driver Qualification File Previously Produced by Defendants ("Plaintiff's Motion to Compel") [#42] filed by Plaintiff Paul Wegner ("Plaintiff" or "Mr. Wegner") on July 9, 2015.  These motions were referred to the undersigned Magistrate Judge pursuant to an Order of Reference dated June 26, 2014 [#11], a Reassignment dated February 10, 2015[#17], and memoranda dated July 8, 2015 and July 9 [#43], respectively. Having now considered the motions and their responses, the applicable case law, and the docket, the court hereby GRANTS Defendant KC Woods Motion for Rule 35 Examination and GRANTS Plaintiff's Motion to Compel.

## BACKGROUND

This case arises from an automobile collision involving Mr. Wegner and a 2007 Freightliner Tractor owned by Defendant KC Woods driven by Defendant Dale Dahlquist ("Defendant Dahlquist" or "Mr. Dahlquist"). [#3]. On or about October 21, 2013, Mr. Wegner was driving his 2011 Subaru Legacy when Mr. Dahlquist attempted to change lanes, causing the trailed attached to the 2007 Freightliner Tractor to collide with Mr. Wegner's vehicle. [*Id.* at ¶ 5]. Mr. Wegner asserts three claims against Defendants: (1) negligence against Mr. Dahlquist; (2) negligence *per se* against Mr. Dahlquist; and (3) *respondeat superior* against KC Woods Trucking. [*Id.* at 3-4]. In the Scheduling Order, Plaintiff claimed damages for, *inter alia*, future loss of earnings and impairment of earning capacity, physical impairment, and disability. [#16 at 4]. Mr. Wegner did not, however, identify any specific calculation or bases for such relief, simply characterizing his damages as "[i]mpairment of earning capacity, physical impairment and disability, to be determined according to proof and/or retained expert evaluations." [*Id.*]

The Parties have engaged in discovery involving a number of issues, including Mr. Wegner's medical condition, the repercussions to his earning capacity, and Mr. Dahlquist's qualifications as a tractor-trailer driver. On the first issue, Plaintiff has disclosed Helen M. Woodard, a Rehabilitation Counsel, as one of his experts, in which she indicated that Mr. Wegner "was interviewed by telephone and a personal contact is planned for the future." [#38-4 at 1]. In her report, Ms. Woodard recites an extensive history from Mr. Wegner, including but not limited to facts about Mr. Wegner's education, employment history, and medical history. [#38-4 at 1-14]. In doing so, it includes information clearly provided by Mr. Wegner, rather than through written records. *See, e.g.* [#38-4 at 1-2 (History), 14 (Current Status)].

As to Mr. Dahlquist's driving qualifications, Mr. Dahlquist testified at deposition that he had no health issues that affected his ability to drive the tractor-trailer.  [#42-4 at 43:14-16]. Plaintiff seeks additional information contained in Mr. Dahlquist's Driver Qualification File and Application, namely, an unredacted version of his Medical Examination Report.   While Defendants have produced a redacted copy of Mr. Dahlquist's Medical Examination Report, Plaintiff argues that the Medical Examination Report is not protected by the Physician-Patient privilege, and without the unredacted report, Plaintiff cannot determine whether Mr. Dahlquist's testimony regarding his health conditions is accurate or whether Defendant KC Woods had knowledge that Defendant Dahlquist was not medically qualified to operate the tractor-trailer, notwithstanding the Medical Examiner's ultimate determination.  [#42 at 6-7].

The court now turns to the issues at hand.

## ANALYSIS

### I.   Rule 35 Examination

Mr. Wegner's principal objection to a Rule 35 examination by KC Woods is that there is no good cause to subject Plaintiff to "what is essentially an unsupervised deposition by a Defendant's Vocational Rehabilitation Expert because Defendant's expert already has all the information necessary to assess the Plaintiff's vocational capacity."  [#45 at 2]. Mr. Wegner further argues that "Rule 35 is not implicated where a Defendant 'seeks a mere vocational assessment not connected with a physical or mental examination'" [*id.* at 2] and relies upon *Storms v. Lowe's Home Centers, Inc.*, 211 F.R.D. 296 (W.D. Va. 2002) and *Yarosevich v.*

*Toyota*, *et al.*, No. 05-cv-182-JD, 2008 WL 2329331 (D.N.H. June 5, 2008) to support its proposition that a Rule 35 examination is "not implicated."[1]

As an initial matter, the court respectfully disagrees with Plaintiff's argument that Rule 35 is "not implicated" by Mr. Wegner's use of a vocational rehabilitation expert to support his demand for future loss of earnings and impairment of earning capacity, physical impairment, and disability.   Rule 35 provides that a court may order a party whose mental or physical condition is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner.  Fed. R. Civ. P. 35(a)(1).  The *Storms* court observed that it "has not been able to find a case in which a court holds that a vocational assessment does not fall within the Rule's definition of a 'physical or mental examination.'"   *Storms*, 211 F.R.D. at 297.   The more appropriate inquiry is whether, under Rule 35 and the specific facts of this case, KC Woods has established good cause to warrant a limited examination.  *Id.*   I find that it has.

There can be no dispute that Mr. Wegner has put in controversy his vocational abilities not only through his demand for future loss of earnings and impairment of earning capacity, physical impairment, and disability, but also by specifically indicating that his impairment of earning capacity, physical impairment and disability will "be determined according to proof and/or retained expert evaluations" – not just through testimony of fact witnesses.   [#16 at 4].  To do so, Plaintiff offers a vocational expert, Ms. Woodward, who has been permitted direct

---

[1] While criticizing KC Woods' reliance on "non-binding authority" from this District [#45 at 3], the two cases upon which Mr. Wegner relies consists of one reported case and one unreported case, both outside of this District, both of which are non-binding on this court. Similarly, KC Woods' characterizes Mr. Wegner's request for the production of the unredacted Medical Examination Report as a "fishing expedition."  [#44 at 1].  While certainly not rising to the level of sanctionable conduct, the court encourages counsel to refrain from unwarranted criticisms towards opposing parties and counsel, which neither persuades the court nor promotes civility within the legal profession.

access to Mr. Wegner through a telephone interview and a contemplated "personal contact."[2]

Ms. Woodward's assessment of Mr. Wegner's condition was therefore, not simply limited to

written information, but also was ascertained through an interview of Plaintiff.

KC Woods simply asks for the same opportunity, and I find such request is reasonable so

that its vocational expert may challenge, in her report or at trial, the testimony and opinions of

Ms. Woodward.   Mr. Wegner has not identified any basis to establish that such examination will

be harmful to him.   In addition, Plaintiff's concern about an "unsupervised deposition" is

misplaced.  Presumably, Mr. Wegner will tell the truth, regardless of whether he is under oath

and being "supervised" by counsel, and KC Woods will instruct Ms. Burns to refrain from

asking about advice provided by Plaintiff's counsel to Mr. Wegner.  A deposition under Rule 30

would afford Plaintiff no greater protection, as objections in deposition (unless based on

privilege) do not prevent an examination from proceeding, and must be stated concisely in a non-

argumentative fashion.  Fed. R. Civ. P. 30(c)(2).

Therefore, the court will allow an examination of Plaintiff by Defendant KC Woods'

vocational rehabilitation expert, limited to two hours, to be conducted no later than July 24,

2015.

## II.      Medical Examination Report

Plaintiff asserts a claim of *respondeat superior* against KC Woods.   [#3 at ¶¶ 24-27].

Under a theory of *respondeat superior*, an employer may be liable for the negligent acts of an

employee when the employee is within the scope of his or her employment.  *See Raleigh v.*

*Performance Plumbing and Heating*, 130 P.3d 1011, 1019 (Colo. 2006) (citation omitted).  Strict

liability is imputed to the employer; if Mr. Dahlquist is determined to be negligent and acting

---

[2] Mr. Wegner does not assert that the contemplated "personal contact" has not occurred.

within the course of his employment, then Mr. Wegner need not establish any other negligence on the part of KC Woods. *See Stat-Tech Liquidating Trust v. Fenster*, 981 F. Supp. 1325, 1336 (D. Colo. 1997). In contrast, the tort of negligent hiring or negligent supervision attaches directly to an employer, and turns on the employer's failure to discover that the employee created an undue risk of harm to others. *Johnson v. USA Truck, Inc.*, Civil Action No. 06-cv-00227-EWN-MEH, 2007 WL 2461645, *3 (D. Colo. 2007).

Plaintiff has not asserted a claim for negligent hiring or retention that would put KC Woods' knowledge of whether Mr. Dahlquist was medically qualified to operate a commercial vehicle, in contrast to the ultimate conclusion of the medical examiner, at issue. Nor does Plaintiff or his expert explain how KC Woods' knowledge of whether Mr. Dahlquist was medically qualified to operate a commercial vehicle would affect whether Mr. Dahlquist is liable for negligence. [#42, #42-6]. The elements of negligence are well-settled: (1) a duty was owed by defendant to the plaintiff; (2) defendant breached that duty; (3) there was an injury to the plaintiff; and (4) there was a proximate cause relationship between the breach and the injury. *Casebolt v. Cowan*, 829 P.2d 352, 356 (Colo. 1992) (*en banc*). KC Woods' knowledge is simply not relevant to whether Mr. Dahlquist acted negligently, and the deadline to amend pleadings has long passed.

However, Plaintiff argues that "Plaintiff also cannot determine whether Defendant Dahlquist's selfreport [sic] squares with his deposition testimony that he had no health issues affecting his ability to drive on the date of the accident," which the court construes as Mr. Wegner's attempt to ascertain evidence to both determine whether Mr. Dahlquist knew that he should not drive or to challenge Mr. Dahlquist's credibility. Moreover, I am not persuaded that Mr. Dahlquist would be considered a "patient" of the Medical Examiner under Colo. Rev. Stat. §

13-90-107(1)(d), or that he would have had any reasonable expectation of privacy when the medical examination was going to be provided voluntarily to a potential employer. *See* [#42-1 at 1 ("Do Not complete this medical disclosure until after a 'conditional' offer of employment has been made to you."]. *Cf. Estate of Turnbow v. Ogden City*, 254 F.R.D 434, 437-38 (D. Utah 2008) (holding that police officer had no reasonable expectation of privacy of his pre-employment mental health evaluation). I find that under the Federal Rules of Civil Procedure, information about Mr. Dahlquist's knowledge of any health limitations or credibility is discoverable as relevant and non-privileged. To the extent that Mr. Dahlquist believes that a Protective Order is warranted for the disclosure of the Medical Examination Report, the Parties are directed to meet and confer about such proposed Protective Order and submit one for the court's consideration no later than July 19, 2015.

## CONCLUSION

For the reasons set forth herein, the IT IS ORDERED:

(1)     Defendant KC Woods Trucking, Inc.'s Motion For Fed.R.Civ.P. 35 Examination of Plaintiff  [#38] is GRANTED;

(2)     Plaintiff Paul Wegner is DIRECTED to submit to an examination by Ms. Margot Burns, limited to two hours, no later than July 24, 2015;

(3)     Plaintiff's Motion to Compel Production of the Unredacted Medical Examination Report Contained in the Driver Qualification File Previously Produced by Defendants [#42] is GRANTED;

(4)     Defendant KC Woods Trucking, Inc. is COMPELLED to produce an unredacted copy of Mr. Dahlquist's Medical Examination Report no later than July 20, 2015;

(5)     To the extent that Defendant Dale Dahlquist determines that a Protective Order is required for the disclosure of the unredacted Medical Examination Report, the Parties are directed to meet and confer and submit a proposed Protective Order for the court's consideration no later than July 19, 2015.


Dated:  July 13, 2015                                          BY THE COURT:


                                                               s/ Nina Y. Wang
                                                               Nina Y. Wang
                                                               United States Magistrate Judge